512 S.E.2d 504

CITY OF CHARLESTON, Appellant,

v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, Respondent.

City of Charleston, Appellant,

v.

United Services Automobile Association, USAA Casualty In-
surance Company, USAA General Indemnity Company,
and USAA Life Insurance Company, Respondents.

No. 24894.

Supreme Court of South Carolina.

Heard Nov. 17, 1998.

Decided Feb. 8, 1999.

Rehearing Denied March 5, 1999.

68

Robert G. Clawson, Jr. and Timothy A. Domin, both of Clawson & Staubes, LLC, of Charleston, for appellant.

W. Jefferson Leath, of Leath, Bouch, & Crawford; Stephen P. Groves and John Hamilton Smith, both of Young, Clement, Rivers & Tisdale; and Gedney M. Howe, III, of Gedney M. Howe, III, P.A., all of Charleston, for respondent GEICO.

G. Dana Sinkler and Andrea H. Duenas, both of Warren & Sinkler, of Charleston; and Stephen H. Orel and Lorna M. McKenzie, both of LeBeouf, Lamb, Greene & MacRae, of New York, for respondent USAA.

Roy D. Bates, and William P. Griggs, both of Columbia, for amicus curiae Municipal Association of South Carolina.

FINNEY, Chief Justice:

■ These consolidated cases involve a challenge by two national insurance companies (GEICO and USAA) to a business license Ordinance enacted by appellant City of Charleston (Charleston). The circuit court struck down the Ordinance as violative of the Commerce Clause,[1] and Charleston appeals. We hold the Ordinance is exempt from Commerce Clause scrutiny because it was enacted pursuant to the State's delegation[2] of its McCarran–Ferguson Act[3] immunity. Accordingly, we reverse.

---

1. U.S. Const. art. 1, § 8, cl. 3.

2. S.C.Code Ann. § 38–7–160 (Supp.1997).

3. 15 U.S.C. §§ 1011 thru 1015 (1977).

For purposes of these appeals, it is conceded that GEICO and USAA [4] are similarly situated. Both write insurance on property and risks located in Charleston, and both have headquarters out-of-state. Neither maintains an office, nor owns property or has agents in Charleston. Business is conducted by interstate mail and telephone. Both companies employ adjusters who live in South Carolina, but not in Charleston, and occasionally use independent adjusters or investigators to handle claims within Charleston.

GEICO and USAA refused to pay the amounts due under Charleston's Ordinance. Charleston brought these suits to recover the money. Each party filed a summary judgment motion, and in both cases the trial judge granted the insurance company's motion, striking down the Ordinance as violative of the Commerce Clause. Since the dispositive issue in each case is identical, we have consolidated the appeals.

The Commerce Clause implicitly limits the power of the State to burden interstate commerce, a concept known as the "dormant" or "negative" Commerce Clause. Prior to 1944, the United States Supreme Court (USSC) consistently held that insurance was not commerce for purposes of the Commerce Clause. *E.g., Paul v. Virginia,* 75 U.S. 168, 8 Wall. 168, 19 L.Ed. 357 (1869). Consequently, the regulation and taxation of the insurance business was left up to the States, free from any impact by the dormant Commerce Clause. This policy also permitted insurance companies to cooperate in sharing data, determining risks, and fixing rates because federal anti-trust legislation only applied to interstate commerce.

In 1944, in the context of anti-trust litigation, the USSC overruled long standing precedents and held insurance was commerce within the meaning of the Commerce Clause. *United States v. South–Eastern Underwriters Ass'n,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944) (*South–Eastern*). The next year, Congress responded to *South–Eastern* by enacting the McCarran–Ferguson Act, 15 U.S.C. §§ 1011 thru

---

4. USAA Life is in a somewhat different position, only occasionally using investigators in Charleston. This distinction does not affect our analysis.

1015 (1977). The purpose of the McCarran–Ferguson Act was to restore regulatory and taxing authority to the States:

Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States. 15 U.S.C. § 1011.

The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business. 15 U.S.C. § 1012(a).

No Act of Congress shall be construed to invalidate, impair, supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business.... 15 U.S.C. § 1012(b).

South Carolina responded to the McCarran–Ferguson Act by enacting a comprehensive insurance law, now codified in Title 38 of the South Carolina Code of Laws.

Charleston's General Business License Ordinance, § 1, provides in pertinent part:

Every person engaged or intending to engage in any calling, business, occupation, or profession listed in the classification index portion of this ordinance, in whole or in part, within the limits of the City of Charleston, South Carolina is required to pay an annual license fee and obtain a business license in compliance with the terms and conditions of this ordinance.

Prior to 1994, the Ordinance contained the following provision for insurance companies:

6300—Insurance Companies

On gross premiums collected through offices of agents located in the city, wherever the risk is located, or collected on policies written on property or risks located in the City, wherever the premiums are collected.

Section 6300 was amended effective the 1994 tax year, and now reads:

On gross premiums collected on policies written on property or risks located in the City, wherever the premiums are collected.

\*    \*    \*

Solicitation for insurance, receiving or transmitting an application of policy, examination of a risk, collection or transmitting of a premium, adjust [sic] a claim, delivering a benefit or doing any act in connection with a policy or claim shall constitute doing business within the city whether or not an office is maintained therein. A premium collected on property or a risk located within the City shall be deemed to have been collected within the City.

It is undisputed that, had the State enacted a tax on gross premiums such as that imposed by the Ordinance, such a tax would be immune from Commerce Clause scrutiny by virtue of the McCarran–Ferguson Act. *See Prudential Ins. Co. v. Benjamin,* 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946). Charleston contends, and we agree, that the State has delegated this type of taxing authority to it by enacting S.C.Code Ann. § 38–7–160 (Supp.1997), which specifically permits municipalities to collect a business license fee or tax based upon insurance premiums collected in the municipality or realized from risks located therein. The McCarran–Ferguson Act restored to the States the authority to regulate and tax the business of insurance. This grant includes the power to enact a statute such as § 38–7–160. Accordingly, the circuit court orders declaring Charleston's Ordinance unconstitutional are

**REVERSED.**

TOAL, MOORE, WALLER and BURNETT, JJ., concur.